## BOARD *a.* BOARD.

*Supreme Court, Second District ; General Term, January,* 1857.

ADMEASUREMENT OF DOWER.—PROCEEDINGS BEFORE SURROGATE.

It is within the discretion of the surrogate to determine what is sufficient proof of the service of a petition for admeasurement of dower and of notice oi the day of its intended presentation ; and if evidence is submitted to him which raises a fair presumption that the service called for has been made, this will sustain subsequent proceedings.

An admission of service of a petition for admeasurement of dower with notice of the day of its intended presentation, signed by the general guardian of minor heirs, is sufficient evidence of service to bind such heirs.

·What is a sufficient identification of papers served, in an affidavit of service.

The mere fact that the report of commissioners to admeasure dower is filed in surrogate's office before the day named for their making report in the order of appointment, is not an irregularity which avoids subsequent proceedings ; where no proceedings are had upon the report prior to the day named for the report to be made.

It is the *service* of the petition and notice in proceedings for the admeasurement of dower, and not the *proof* of service, which gives the surrogate jurisdiction ; and hence an adjournment may be ordered on the day named in the notice for the presentation of the petition, if the papers have then been served, although no proof of service is then before the surrogate.

Appeal from a judgment at special term on a verdict taken subject to the opinion of the court.

This was an action by Julia Board against George Board, to

recover fifty acres of land alleged to have been set off to the plaintiff as her dower as widow of John Board, on proceedings for the admeasurement of dower, had, on petition of the plaintiff, before the surrogate of Orange county. The defence was based on alleged irregularities in the proceedings before the surrogate, which it was contended invalidated the admeasurement.

The cause was tried before Mr. Justice Brown, November 13, 1854. On the trial, the plaintiff having proved that her husband died possessed of a tract of one hundred and fifty acres of land, of which the premises in question formed a part, introduced the record of the proceedings had before the surrogate for the admeasurement of her dower. By the proofs embraced in that record it appeared that George Board and Gabriel S., James H., and Sarah E. Board, were the only heirs at law of John Board, and that one Seth M. Satterly was in possession of the premises when the proceedings were instituted.

The proceedings before the surrogate were commenced by petition by Julia Board for the admeasurement of her dower in the lands of her deceased husband; accompanied by a notice to the heirs of John Board that the petition would be presented to the surrogate, on March 10, 1835. Annexed to this notice were the following documents, which were relied upon as proofs of the service of the petition and notice on all the parties entitled to service :—

"I do hereby admit due service of a copy of the preceding petition and notice on me, this 17th day of February, 1835."

JULIA BOARD,<br>JESSE ROE, General Guardian of the Estate of George Board and Gabriel S. Board.

Witness, John B. Booth.

*Orange County, ss.*—George Board and Julia Board, of the town of Goshen, in the county of Orange, being duly sworn, depose and say, and the said Julia Board for herself says, that she delivered to the said George a copy of the annexed petition and notice to serve on Stephen H. Bull, the general guardian of James H. Board and Sarah Elizabeth Board, two of the heirs at law of John Board, deceased, on the seventeenth day of February last; that she did on the said seventeenth day of February, serve a like copy of said petition and notice on Seth M. Satterly, by delivering the same to him personally, he being in

possession of the lands and premises described in said petition; that she saw Jesse Roe subscribe his name to the admission of service of a copy of said petition and notice : that the said Jesse Roe is the general guardian of the estate of George Board and Gabriel S. Board, heirs at law of the said John Board, deceased. And the said George Board for himself, says, that the said copy of petition and notice, delivered to him by the said Julia Board, was by him, on the same day, delivered to the wife of the said Stephen H. Bull, he being absent from home at the time, by delivering the same to her personally.

JULIA BOARD.<br>GEORGE BOARD.

Sworn this 17th day of March, 1835, before me,

JOHN B. BOOTH, *Surrogate.*

Annexed to the petition and other papers hereinbefore set forth, was a paper in the handwriting of the said surrogate, which was read in evidence, and contained an entry in the following words :

"March 10th, 1835, widow appeared, and no others appeared : this matter adjourned to the 17th March. On the 17th day of March the above-named Julia Board again appeared, and it appearing that copies of the petition and notice in this matter were duly served twenty days before the 10th day of March, the said widow offered the following in evidence, to wit : "—

This entry was followed by an affidavit of James J. Board, showing the facts relied on by the petitioner as the basis of her claim to dower, &c. Further proceedings before the surrogate were also read in evidence, resulting in a decree founded on the report of commissioners appointed to make admeasurement of the present plaintiff's dower, by which the lands claimed by the complainant in this action were set off to the plaintiff. The order of the surrogate appointing the commissioners directed them to report to the surrogate " on the twenty-ninth day of May next " (1835). The final order of the surrogate confirming the report and admeasurement was made, as appeared by its date, June 2, 1835 ; but by recitals in that order it appeared

that the report thereby confirmed was filed in the surrogate's office on the twenty-*eighth* day of May, instead of on the twenty-*ninth*, the day named in the order of appointment.

The defendants objected to the reading of the petition and other proceedings, on several grounds.

1. Because the proof of the service of a copy of the petition and notice of its presentation on the guardian of James H. Board and of Sarah Elizabeth Board, and on Seth M. Satterly, was made by Julia Board, the petitioner and plaintiff, in connection with George Board.

2. Because the commission to the commissioners was made returnable on May 29, 1835, and from the record of the proceedings it appeared that the report was filed in the surrogate's office on May 28, 1835.

3. Because the notice that the petition would be presented to the surrogate, specified that the same would be presented on March 10, 1835; while from the book of records it appeared that the petition was not presented by the petitioner and plaintiff until March 17, 1835, and that the affidavits of service made by Julia Board and George Board, were made on March 17, 1835 ;—and because there was, therefore, no proceeding before the surrogate on March 10, 1835, which could have been adjourned to the 17th, and the surrogate had no jurisdiction to proceed in the matter on the 17th.

The objection was overruled and the evidence admitted; under exception. The case having been closed, the presiding judge directed a verdict for the plaintiff, subject to the opinion of the court upon a case to be made. The cause having been afterwards argued at special term, judgment was ordered on the verdict, the following opinion being rendered.

BROWN, J.—I find no difficulty in regard to the service of the copy of the petition and notice in the proceedings for the admeasurement of the dower of the plaintiff in the lands whereof her late husband, John Board, died seized. Annexed to the original petition and notice on file in the surrogate's office, is the written admission of the due service of these papers by Jesse Roe, the general guardian of George Board and Gabriel S. Board. This admission is signed in the presence of John B. Booth, then the surrogate of the county of Orange. The pre-

sumption is that it was signed in open court. The proof of the service upon Stephen H. Bull, the general guardian of James H. Board and Sarah E. Board, is not as clear and explicit as it should be, and is certainly the subject of some doubt. If, however, it be conceded that so much of the proof as is derived from the petitioner herself is inadmissible, still George Board does swear that the papers he served were copies of the petition and notice. The expression employed in the affidavit is not as positive as it might have been, and probably should have been, yet at this lapse of time it is safest to regard it as sufficient to give the surrogate jurisdiction of the subject of the proceeding.

The more serious question is the hiatus or want of a continuance upon the record of the proceedings for the admeasurement of the plaintiff's dower, from the tenth to the seventeenth day of March, 1835. The notice served with the petition named the tenth as the day of presentation. The proof of the service was not furnished until the seventeenth; and as there was no entry of an adjournment from the tenth to the seventeenth on the face of the record, when the case first came to be heard, the objection seemed incapable of being overcome, and fatal to the plaintiff's claim. It is the practice in these courts, however, to transcribe into the book of records the proceedings from the papers and entries on file in the office, and it may very well happen that an error might be made by the clerk employed to perform this task. Upon an examination of the papers and proceedings, I find annexed to the petition and the proofs taken by the surrogate, an entry duly made by him under the date of March 10, 1835, in which it is stated that the "widow appeared and no others appeared, this matter adjourned to the 17th of March." It would therefore seem, that on the day mentioned in the notice the petitioner appeared before the surrogate, and none of the other parties in interest appeared; and that, the petitioner not being prepared to proceed, perhaps from present inability to furnish the proofs, the matter was adjourned until the 17th of March. I shall therefore assume that the entry to which I refer is a part of the record. It is so of right, and can be made so in fact, by an application to the surrogate. This releases the plaintiff from a most serious difficulty, and indeed the only one that appears in the case. After this lapse of time, every reasonable intendment is to be made in favor of the reg-

ularity and validity of the proceedings before the surrogate, and considering the nature of the claim and the defence which has been set up in the answer, as well as upon the trial, I have some satisfaction in finding it in my power to render judgment upon the verdict of the jury for the plaintiff.

Judgment is accordingly given for the plaintiff.

Judgment having been entered accordingly, the defendant now appealed to the general term.

*Charles Monell*, for the appellant. I. The Surrogate's Court being a court of statutory jurisdiction alone, its proceedings or adjudications, to be available for the establishment of a right, must show affirmatively, that such court had jurisdiction of the subject-matter adjudicated and of the persons interested therein; and must also show, that the facts upon which the surrogate acted gave him such jurisdiction. No intendment can be made in favor of the jurisdiction, or the regularity and validity of the proceedings, but the same must affirmatively appear from the record. (Corwin *v.* Merrit, 3 *Barb.*, 341; Bloom *v.* Burdick, 1 *Hill*, 130.)

II. The proceedings and record in the present case show no legal proof of the service of the petition and notice on the parties interested. The statute (2 *Rev. Stats.*, 3 *ed.*, 582, §§ 2, 3) prescribes the mode of service. No action can be taken by the surrogate, on the petition, until *legal proof* of the service prescribed is given; there is no such proof in this case; the service of the petition and notice is established solely by the affidavit of Julia Board, and she, being the petitioner in the proceeding, was not competent to make proof of such service, the entire jurisdiction of the surrogate depending thereon. The affidavit of George Board is nothing more than that he served papers which he received of Julia Board; whether such papers were copies of the petition and notice depends on the affidavit of Julia Board alone. It is not to be presumed, from the fact that the surrogate is a subscribing witness to the admission of service signed by Jesse Roe, guardian, &c., that such admission was signed in open court, especially when, as in this case, it appears that the fact of signing is proved by the affidavit of Julia Board, and that Jesse Roe did not appear before the surrogate

on the 10th of March, the day on which the petition was to be presented, as specified in the notice. In fact, it does not appear by the proceedings before the surrogate, that Jesse Roe, guardian, &c., or any other person except Julia Board, the petitioner, ever appeared before the surrogate in the matter.

III. By the statute (2 *Rev. Stats.*, 3 *ed.*, 582, §§ 1, 2, 3, 9), the application is to be made upon the petition at the time and place specified in th'e notice served. By the terms of the notice the petition was to be presented on the *tenth* of March ; the affidavit of the service of the petition and notice, such as it is, was not made until the *seventeenth* of March : there was then nothing on which the surrogate could act on the tenth of March —no proceeding which he could adjourn—and the fact of the petitioner's appearing on that day, none of the other parties interested appearing, gave the surrogate no jurisdiction or power in the matter. He could take no action in the matter until he had proof of the service of the petition and notice, and that not having been furnished on the tenth of March, the adjournment then made by him cannot bind the parties interested. They were under no obligation to appear at any subsequent day, and are not bound by any proceedings subsequently taken in the matter.

IV. It does not appear from the record and proceedings before the surrogate, that any of the parties except Julia Board ever appeared before the surrogate in the matter of admeasurement. Unless the proceedings are strictly regular they are void, so far as George Board, the defendant, is concerned, and the plaintiff acquires no right from the alleged admeasurement before the surrogate.

V. The commission issued by the surrogate, by its terms, was to be returned on the twenty-ninth of May. By the statute (2 *Rev. Stats.*, 3 *ed.*, 584, § 16), the hearing upon the report is to be heard on *that day* or on some day to which such hearing shall have been adjourned. The report of commissioners was presented to the surrogate on the *twenty-eighth* of May : the order confirming the report was made on the second of June. It does not appear that any adjournment was made from May 29th, or that any of the parties appeared on that day. None of the parties appeared on June 2d, except the petitioner. The

order of confirmation is therefore void, as to all parties other than petitioner.

*J. W. Gott*, for the respondent.—I. The admission of service of a copy of the petition and notice upon Jesse Roe, the guardian of George Board, the defendant, was signed in the presence of the surrogate ; and as his name is subscribed as a witness, the court will presume that it was done in open court. The affidavit of Julia Board, the other subscribing witness to the admission, was surplusage. The evidence of the service of the papers, therefore, as far as the appellant George Board is concerned, was clearly good, and the surrogate, by such service, acquired jurisdiction of his person.

II. The surrogate had jurisdiction of the subject-matter expressly conferred upon him by section 1, of title 7, of chapter 8, of part 3 of the Revised Statutes.

III. By section 17 of the above act, the admeasurement of dower is declared to be " binding and conclusive as to the *location* and *extent* of the widow's right of dower, on the parties who may apply for the same, and on all parties to whom *notice shall have been given* as therein before directed," unless appealed from within thirty days from the time of confirmation. But the same section provides " that no person shall be precluded, thereby, from controverting the *right and title* of such widow to the dower so admeasured."

IV. The guardian of George Board having been duly notified of the proceedings to admeasure the dower, and no appeal having been taken, the admeasurement as to " location and extent" is, by the express terms of the act, made *binding and conclusive* on the appellant, and it would be a manifest evasion of the act to allow him, at this remote day, or at any time, to set up a defective notice to other parties, for the purpose of disturbing the location and extent of the widow's dower. The admeasurement as to location and extent, can be disturbed only by those on whom there was a failure to serve the notice. If they are satisfied, the appellant has no right on their account to disturb the admeasurement. There is no pretence that he had any title to the lands, except what descended to him as one of the heirs at law of his father. The fact that the statute leaves to all persons the power to dispute the *right and title* of the widow,

establishes, if any thing can be needed to strengthen the express words of the act, that the Legislature meant, as far as the location and extent were concerned, that the admeasurement should be binding and conclusive on all who had received notice.

V. There was no irregularity in the commissioners presenting to the surrogate their report on the *twenty-eighth* day of May, instead of on the *twenty-ninth*, as they were commanded in the commission. No person who wished to take objection to the report could be injured thereby, inasmuch as he could have appeared on the twenty-ninth and taken his objections. The presenting of the report on the twenty-eighth instead of the twenty-ninth, could not have affected his rights in any way; but if this was an irregularity, or if others may be found in the proceedings, we allege that, having shown jurisdiction, the decree of the surrogate is, nevertheless, conclusive, however erroneous the proceeding may have been, until they are annulled on appeal. (4 *Wend.*, 436 ; 12 *Ib.*, 533 ; 6 *Johns. Ch. R.*, 381.)

VI. The appellant cannot succeed on the naked question of possession, since it appeared that the respondent had a prior possession.

VII. The statute does not require that a copy of the petition and notice should be served on a tenant for years, and the service upon Seth M. Satterly was therefore unnecessary, and it is immaterial whether it was good or not.

VIII. There is no principle or rule of law that conflicts with the practice of the surrogate in this and other counties admitting proof made by persons applying for admeasurement of dower, of the service of papers on parties interested in such admeasurement; and in the absence of any such principle or rule, it is clearly within the discretion of the surrogate to decide upon the sufficiency of the proof, and such decision should be conclusive upon the parties.

IX. It is insisted that by a reasonable construction of the affidavit of the appellant George Board, in relation to the service of the petition and notice on Stephen H. Bull, the general guardian of James H. Board and Sarah E. Board, it is sufficiently plain, without the affidavit of Julia Board, that he served the identical papers annexed to his affidavit. The affidavit will, without any violation of its language, warrant such construction. If the construction be merely doubtful, the court will construe it

so as to promote the ends of justice, and especially after the lapse of so long a period, will hesitate to disturb the construction of the surrogate.

X. The objection, that the notice of the presentation of the petition stated that it would be presented on the *tenth* day of March, and that by the surrogate's book of records it appears that such petition was not presented until the seventeenth day of that month, and that no entry of adjournment appears in the book, ought not to prevail. It appears from the minutes of proceedings kept by the surrogate, that the widow appeared before the surrogate on the tenth day of that month, and that for some cause which this court will presume sufficient, the matter was adjourned to the seventeenth day of the month. The entry of the surrogate is in point of law a part of the record in the proceedings. It does not appear in the book into which the proceedings were transcribed, owing, doubtless, to the carelessness of the clerk who copied the minutes into the book of records. There can be no doubt but the surrogate, on motion, would insert the entry in the book, and this court will not regard the omission to enter it in the book as material. The record in matters of the admeasurement of dower, is by statute to consist of the " petition, affidavits, notices, orders, reports, and all other proceedings on the application." The above-mentioned entry is therefore a part of the record, although not entered in said book.

By the Court—S. B. Strong, J.—It was undoubtedly necessary, in order to confer upon the surrogate jurisdiction to entertain and act upon the plaintiff's application for the admeasurement of her dower, that copies of the petition and notices should have been actually served upon the heirs at law (personally upon such as were of full age, and through the guardians of such as were minors) of her late husband. I am inclined to think, too, that any one of the heirs may avail himself of the want of notice to any other heir, as the admeasurement would be ineffectual, unless all of them had been notified. As to the proof of the service of the notice, that rests much in the direction of the surrogate. He ought to be reasonably satisfied, and if there is sufficient evidence to raise a fair presumption, although it may not be of a positive and direct character, that will sustain subse-

quent procedure. That is no more than just to the applicant; as, if any defect should be promptly pointed out, she might substitute new proof or give a new notice. In this case, the heirs at law were her minor children, who had general guardians. The guardian of two of them signed an admission of the due notice of the preliminary papers upon him, before the surrogate. It does not appear positively that the admission was made in court, but the fair presumption is that it was, as it is dated on the day when the matter was heard, and was witnessed by the surrogate. As the statute confers upon the guardian the right to represent his ward in the proceedings, the admission was sufficient evidence of the service. Then as to the other two minor heirs, there is an affidavit by the defendant in this suit himself incorporated with, and following, the sworn statement of his mother, that she had delivered to him copies of the petition and notice, *which were annexed,* saying that the said copies of the petition and notice delivered to him by his mother, had been served by him on the guardian of such minors by delivering them to his wife in his absence from home. As the affidavit which the defendant had subscribed and verified by his oath, stated that the papers handed to him were copies of those thereto annexed, and that he had served the said copy of the petition and notice, it seems to me that the papers were sufficiently identified, and if so, the requisite service was proved. If we can look into the subsequent proceedings, and I do not see why we cannot, for further evidence on this subject, an inference that the guardians had been duly notified would fairly result from the fact stated by the commissioners, that both guardians were present when the dower was admeasured, and made no objection to the procedure. Had the heirs been adults, and attended the admeasurement without making any objection, that would have been a waiver of any defect in the proof of the service of the preliminary papers upon them, if it would not have caused a defective service ; and I am inclined to think that the conduct of the guardians would at least fortify the proof of service.

The report was handed to the surrogate on the day previous to the one designated in his order. But it was not for his immediate action, nor did he act at all upon it until on the day regularly appointed. Indeed, the order confirming the admeasurement was not made until the fifth day after the report was

presented, and the heirs had sufficient time to present their objections, if any they had.

It appears from a memorandum made by the surrogate upon a paper annexed to the petition and notice of application and the proofs of service, that, at the time designated in the notice, the applicant appeared before him, but that no other person was present, and that he thereupon adjourned the matter for a short time ; and that, on the adjourned day, the proofs of service of the petition and notice were completed, and the order for admeasurement was made. As the surrogate was then acting as a court, it seems to me that this original minute of his proceedings was competent evidence of an adjournment, although it had not been incorporated in the book of records kept by him at the time. Had an appeal been made from his order, he certainly could have returned his proceedings in adjourning the matter, and the objection that there was no corresponding minute in his book would not have been available. I cannot see why the objection should not be met with equal efficacy when raised collaterally. If the evidence is received, it shows that there was no discontinuance, and that the surrogate's proceeding was regular. It is true that the surrogate had no proof of service of the requisite papers on the guardian of two of the heirs, on the day when he adjourned the matter, but it was the *service* of those papers, pursuant to the statute, which had been actually made, which conferred jurisdiction upon him. The *proof* of the service was subordinate, and, in fact, a question of practice, concerning which the rules are flexible. The delay in furnishing the proof could not injure any one.

The judgment should be affirmed.